## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KRISTAL M. KHAN, MICHELLE R. BALLINGER, and GEORGE A. CRAAN,** individually and on behalf of all others similarly situated,<br><br>             **Plaintiffs,**<br><br>      **v.**<br><br>**PTC INC., THE BOARD OF DIRECTORS OF PTC INC., THE INVESTMENT COMMITTEE OF PTC INC., and JOHN DOES 1-30,**<br><br>             **Defendants.** | **Civil Action No. 1:20-cv-11710-WGY** |

I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

1.      I am a member in good standing of the bar of the Commonwealth of Pennsylvania and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.      I am partner and chair of the Fiduciary Practice Group at Capozzi Adler, P.C. ("Capozzi Adler"), and have been the lead attorney for my firm in this litigation representing Plaintiffs and the proposed Settlement Class in the above-captioned action.

***Class Counsel's Experience***

3.      I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law.  While at Temple, I was the research editor for the Temple International and Comparative Law Journal.  After law school I clerked for a year with a Judge on the New Jersey State Appellate Court.

1

4.      I have been litigating ERISA (the Employee Retirement Income Security Act of 1974) fiduciary breach lawsuits for 17 years, first at my prior firm of Kessler Topaz Meltzer & Check, LLP (KTMC), and currently at Capozzi Adler where, as noted above, I am chair of the Fiduciary Practice Group.  Over my career I have been actively involved in many high-profile ERISA class actions.  For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants.  *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

5.      My partner Donald Reavey who chairs the firm's Litigation Practice Group is an experienced litigator frequently handling multi-million dollar disputes.  A 1998 graduate of Penn State, Dickinson School of Law, Mr. Reavey has leaned on his two-decade plus litigation experience in filing and litigating dozens of ERISA breach of fiduciary duty actions over the last several years.  *See* biography at https://capozziadler.com/donald-r-reavey-esquire/.

6.      Other members of the Fiduciary Practice Group include Mid-Level Associate, Gabrielle P. Kelerchian, a 2017 graduate of Villanova Law School with several years of litigation experience. *See* biography at https://capozziadler.com/gabrielle-p-kelerchian-esquire/.  Before joining Capozzi Adler, Ms. Kelerchian zealously represented individuals in medical malpractice and personal injury cases at Philadelphia area law firms.  Rounding out the ERISA team are our support staff which include paralegals and other paraprofessionals who assist in the practice.

7.      I and my firm have been lead or co-lead interim counsel in dozens of ERISA breach of fiduciary duty actions.  Recently, Capozzi Adler was appointed interim co-lead class counsel in *Tracy et al. v. The American National Red Cross*, No. 1:21-cv-00541-EGS (D.D.C. Apr. 16, 2021) an ERISA class action analogous to the instant Action.  Capozzi Adler was also appointed co-lead

class counsel in *Boley, et al. v. Universal Health Services, Inc., et al.* 2021 WL 859399 (E.D.Pa. Mar. 8, 2021). Additionally, Capozzi Adler has been appointed interim lead or co-lead class counsel in several analogous ERISA breach of fiduciary duty matters. *See, e.g., Bilello, et al., v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (S.D.N.Y. Aug. 10, 2020) (Doc. 11.) (appointing Capozzi Adler interim lead class counsel); *Covington et al. v. Biogen Inc. et al.*, No. 1:20-cv-11325 (D. Mass. Oct. 6, 2020 (Doc. 24) (appointing Capozzi Adler interim Co-Lead Class Counsel); *Tepper et al. v. Omnicom Group et al.*, No. 20-cv-4141 (S.D.N.Y. Sept. 17, 2020) (Doc. 13) (same); *Johnson et al. v. Quest Diagnostics et al.*, No. 2:20cv07936 (D.N.J. Oct. 2, 2020) (Doc. 7) (same).

8.      Of particular importance here, while I was counsel at KTMC and in my current position, in the course of prosecuting ERISA class actions such as this, I have supervised the preparation of numerous consolidated pleadings, responses to motions to dismiss, drafting of discovery requests and review of hundreds of thousands of pages of plan-related documents and related documentation, and litigated cases through the summary judgment and trial phases.

9.      The firm strives to obtain the best results for class members in every circumstance. We have successfully defeated motions to dismiss similar allegations in numerous actions. *See, e.g., Kendall et al v. Pharmaceutical Product Development, LLC*, No. 7:20-cv-00071-D (ECF No. 28) (E.D.N.C. March 31, 2021) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 3:20-cv-00654-FDW-DSC (ECF No. 25) (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *In re Medstar*

*ERISA Litig.*, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva v. Evonik Corp.* slip op. (D.N.J. Dec. 30, 2020) (same); *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020).

10.     We have also been successful at the appellate level resulting in the reversal and remand of wrongly dismissed actions.  *See, e.g., Kong et al. v. Trader Joe's Co.,* No. 20-56415 (9th Cir. Apr. 15, 2022) (reversing district court dismissal of ERISA excessive fee action); *Davis et al. v. Salesforce.com. Inc. et al.*, No. 21-15867 (9th Cur. Apr. 8, 2022) (same).  Conversely, we have successfully obtained affirmance of correctly decided cases.  *See, e.g., Hawkins et al. v. Cintas Corp.*, No. 21-3156 (6th Cir. Apr. 27, 2022) (upholding denial of motion to compel arbitration in ERISA case).

11.     My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering millions of dollars for its clients and class members.  *See, e.g., Buescher, et al., v. Brenntag North America, Inc., et al.*, No. 5:20-cv-00147 (E. D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Pinnell, et al., v. Teva Pharmaceuticals USA, Inc., et al.*, No. 2:19-cv-05738-MAK (E. D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Freck v. Cerner Corp., et al.*, No. 4:20-CV-00043-BCW (W.D. Mo. 2020) (recovered $4,050,000.00 class settlement); *Gerken, et al. v. ManTech Int'l Corp, et al.*, No. 1:20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

12.     Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class in this case and has in fact done so as evidenced by our litigation efforts to date, including conducting discovery and attending mediation.  With three office locations, the firm has been successfully serving clients for over 23 years offering a full range of legal services.

*Procedural History*

13.     Following several months of investigation, including engaging consulting experts, Plaintiffs Kristal M. Khan, Michelle R. Ballinger and George A. Craan filed a Class Action Complaint ("Complaint") on September 17, 2020 (ECF No. 1) against three categories of Defendants: (1) PTC Inc. ("PTC"); The Board of Directors of PTC Inc. and its members (the "Board"), and The Investment Committee of PTC Inc. and its members (the "Committee"). Plaintiffs alleged, *inter alia*, that throughout the putative Class Period (September 17, 2014 through the date of judgment), Defendants selected a slate of investment options for the Plan that were imprudent due to their high fees where identical or nearly identical alternative funds – differing only in price – were available in the marketplace.  Plaintiffs alleged had there been a prudent process in place, the majority of these funds would have been replaced with less expensive alternatives as early as the beginning of the Class Period.

14.     In addition to the aforementioned claims, Plaintiffs alleged the Plan suffered millions of dollars in damages due to unreasonably high recordkeeping fees that ranged from $292.27 to $380.22 per participant annually when a reasonable amount should have been much less. There was a genuine dispute between the parties as to the type of fees that should count as recordkeeping expenses.

15.     Plaintiffs' claims fell under three theories of liability.  The first theory is that during the Class Period, Defendants failed to, among other things, utilize the lower fee share classes that were identical in all ways except price to the funds already in the Plan ¶¶ 81-90 and the second theory is that Defendants failed to monitor or control the Plan's recordkeeping expenses ¶¶ 100-115.  The first two theories of liability overlap in the sense that the revenue sharing derived from selecting higher-cost share classes may have been used to pay recordkeeping expenses.  The third

theory is derivative of the first two theories and is premised on PTC and the Board Defendants' failure to adequately monitor the Committee, ¶¶ 123-129.

16.    On January 15, 2021, Defendants filed their Motion to Dismiss Plaintiffs' Complaint For Failure to State A Claim Upon Which Relief Can Be Granted (ECF No. 10, 14 through 14-6, 15).

17.    On January 15, 2021, Defendants also filed their Motion to Dismiss Plaintiffs' Complaint For Lack of Subject-Matter Jurisdiction Under FED. R. CIV. P. 12(b)(1) (ECF No. 11 through 11-3).

18.    On February 12, 2021, Plaintiffs filed their Memorandum of Law In Opposition to Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) (ECF No. 21).

19.    On February 12, 2021, Plaintiffs also filed their Memorandum of Law In Opposition to Defendants' Motion to Dismiss For Failure to State A Claim Upon Which Relief Can Be Granted (ECF No. 22).

20.    Defendants filed a Reply Brief In Support of Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6) on March 12, 2021 (ECF No. 25).

21.    Defendants also filed a Reply Brief In Support of Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) on March 12, 2021 (ECF No. 26).

22.    The Parties presented before the Court for oral argument on Defendants' motions on March 31, 2021.

23.    On April 6, 2021, the Court entered an Order granting in part and denying in part Defendants' Motion to Dismiss for Failure to State A Claim (ECF No. 34).  During oral argument on March 31, 2021, the Court stated Plaintiffs may proceed with the following claims:

- Count I (asserted against the Investment Committee), for failure to prudently and loyally manage the Plan's assets because during the Class Period Defendants failed to, among other things, utilize the lower fee share classes that were identical in all ways except price to the funds already in the Plan ¶¶ 81-90 and failed to monitor or control the Plan's recordkeeping expenses ¶¶ 100-115. *See* Tr. at 4: 13-25 (March 31, 2021) ("I have to tell you, having looked all this over, um, as to the investment committee, I don't see how you can maintain this claim save for the, um, argument that they failed to utilize lower fee-share classes, so much of your complaint as is set forth in Paragraphs 81 through 90, and the investment committee's alleged failure to monitor and control recordkeeping expenses, um, and that would be Paragraphs 100 and 115. For the rest of it, it seems as to investment committee, the, um, Count 1, has to be dismissed.")

- Count II (asserted against PTC and the Board Defendants), failure to adequately monitor other fiduciaries, ¶¶ 123-129. *See also* Tr. at 5: 3-5 ("…If I let those continue as to the investment committee and the rest of it continue as Count 2 as to PTC, you're fine with that, aren't you?") [1]

24.    On April 20, 2021, the Court entered a Memorandum & Order dismissing Defendants' motion to dismiss for lack of subject matter jurisdiction (ECF No. 35).

25.    On May 4, 2021, Defendants filed their Answer and Defenses to Plaintiffs' Complaint (ECF No. 37).

---

[1] The Court dismissed Plaintiffs' breaches of fiduciary duties of loyalty and prudence claims with respect to Defendants' failure to investigate and select lower cost alternative funds ¶¶ 72-80 and utilize lower cost passively managed and actively managed funds ¶¶ 91-99.

26.    Plaintiffs filed their Motion for Class Certification on August 16, 2021 (ECF No. 42 through 44-6).

27.    On August 25, 2021, the Parties agreed to participate in settlement discussions and filed a Joint Motion for Stay Pending Settlement Discussions (ECF No. 46).

28.    The Court entered an order administratively closing the action on September 8, 2021 (ECF 49).

29.    The Parties attended a mediation under the auspices of Hunter R. Hughes, III on September 21, 2021.

30.    On October 1, 2021, the Parties filed a Joint Status Report notifying the Court of the outcome of September 21, 2021 mediation (ECF No. 51).

***Discovery Practice***

31.    On May 1, 2020, May 13, 2020, June 23, 2020, July 30, 2020, and July 31, 2020, prior to filing suit, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA.

32.    In response to Plaintiffs' request, Defendants produced numerous responsive documents.

33.    On May 28, 2021, Defendants served their First Interrogatories To Plaintiffs and Defendants' First Requests For Production of Documents to Plaintiffs.  Plaintiffs served responses to Defendants' requests on July 2, 2021.

34.    On June 23, 2021, Plaintiffs served Plaintiffs' First Request For Production of Documents to All Defendants to Defendants.

35.    On July 31, 2021, Plaintiffs served Plaintiffs' First Set of Interrogatories Directed to All Defendants to Defendants.  Defendants produced over 3,400 pages of documents, including

Plan documents, summary plan descriptions, participant investment disclosures, committee charters, investment policy statements, trust and recordkeeping agreements, fee schedules, committee meeting minutes and materials, and account statements.

36.    The Parties were in the process of scheduling Plaintiffs' depositions at the time they agreed to engage in Mediation.

***Mediation***

37.    On September 21, 2021, the Parties participated in a mediation before Hunter R. Hughes, III, Esquire, a neutral, third-party private mediator with experience mediating ERISA class actions.

38.    Plaintiffs' counsel submitted extensive mediation statements and Plaintiffs' counsel personally and meaningfully participated in the mediation.

39.    After reviewing all of the relevant information, Plaintiffs determined maximum potential damages to the Plan to be at least $2.9 million before calculation of prejudgment interest. This damages amount reflects damages related to Plaintiffs' remaining claims.  This assumes a reasonable per participant annual recordkeeping rate of $35.

40.    In particular, after the Court's motion to dismiss order, the only claims remaining in the Action under Count I of the Complaint were claims related to the alleged failure of Defendants to use the lowest share classes available and failure to monitor or control the Plan's recordkeeping expenses.

41.    These claims overlap because Defendants argue they used revenue sharing from the higher-cost share classes of Plan funds to pay for the Plan's recordkeeping.

42.    Following a full day of mediation, the parties arrived at a settlement in principle, settling this matter for $1,725,000.00.  Plaintiffs were also able to secure non-monetary

concessions. PTC agreed to, within a reasonable period after the Settlement Effective Date (i.e., up to 18 months from the Settlement Effective Date), to conduct or cause to be conducted a request for proposal relating to the Plan's recordkeeping and administrative services, if the Plan's fiduciaries have not already done so.

43.     Several weeks of negotiations followed to finalize the terms of the Settlement Agreement. That Settlement Agreement, inclusive of exhibits, was finalized and executed on December 17, 2021. It is attached here as Exhibit 1.

44.     Throughout the litigation and settlement negotiation processes, Class Counsel has been cognizant of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses, which is based in part on Class Counsel's extensive experience with ERISA litigation, the investigation performed in connection with filing the Complaint, and the facts obtained during the course of litigation.

45.     It is the opinion of Class Counsel that the proposed Settlement is fair and reasonable and the Settlement amount achieved, approximately 59% of the recovery Plaintiffs could hope to achieve at trial is substantial. There is no doubt lawsuits of this type brought pursuant to the ERISA face significant litigation and trial risks. Given my years of experience in this field of law, including, trying an analogous case to an unfavorable verdict for plaintiffs in *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009), I believe the settlement achieved in this case is adequate and certainly reasonable and fair.

46.     The Settlement Class encompasses thousands of Plan participants. Plaintiffs are not aware of any Settlement Class member who intends to oppose the Settlement.

***The Settlement Terms***

10

47.     The Settlement provides PTC (or its insurers) will pay $1,725,000.00 – the Gross Settlement Amount – to be allocated to participants on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 7 of the Settlement Agreement).

48.     Additionally, the Settlement includes non-monetary terms.  Within 18 months from the Settlement Effective Date, if the Plan's fiduciaries have not already done so, the Plan's fiduciaries will conduct or cause to be conducted a request for proposal relating to the Plan's recordkeeping and administrative services.

49.     The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court.

50.     The Class Members include all individuals in the Settlement Class, or:

> all persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.  Excluded from the Settlement Class are Defendants and their Beneficiaries.

*See* Settlement Agreement, Section 1.45.  Class Period means the period from September 17, 2014 through the date of the Preliminary Approval Order, which was May 20, 2022.  *Id.*, Section 1.13.

51.     A portion of the funds from the Net Settlement Amount will be allocated to each Class Member in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members.  *See* Plan of Allocation at II.C.  Class Members who are entitled to a distribution of less than the minimum amount of $10.00 will receive $10.00, the De Minimis amount, from the Net Settlement Amount. *Id.* at II.D.  For Class Members with an Active Account (an account with a positive balance) as of September 30, 2021, each Class Member's

11

Final Entitlement Amount will be allocated into their Plan account. *Id.* at II.E. Former Participants shall be paid directly by the Settlement Administrator by check. *Id*. at II.F.

52.    Class Counsel intends to seek to recover their attorneys' fees not to exceed $575,000.00. *See* Settlement Agreement, Section 1.4. Class Counsel also intends to seek to recover litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $50,000.00. *Id.* Additionally, Class Counsel intends to seek Class Representatives' Case Contribution Awards in an amount not to exceed $10,000 each for Class Representatives Kristal M. Khan, Michelle R. Ballinger, and George A. Craan. *Id.*

53.    Defendants also intend to retain an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan. *See* Settlement Agreement, Sections 1.26, 2.1. The fees and expenses of the Independent Fiduciary, not to exceed $25,000, will be paid from the Gross Settlement. *Id.*, Sections 1.2, 2.1.3.

### *Effectuation of Notice*

54.    The Court approved Class Counsel's selection of JND Legal Administration ("JND") as settlement and notice administrator and duly appointed JND as the Settlement Administrator. *See* Preliminary Approval Order, ¶ 8.

55.    JND has submitted a declaration testifying to their efforts regarding sending notice to the Settlement Class. *See* Declaration of Ryan Bahry Regarding Settlement Administration (Exhibit 2).

56.    On June 6, 2022, JND received two updated spreadsheets from Defendants containing, among other information, the names, mailing addresses, e-mail addresses (where available), social security numbers, and account balance information for a total of 6,424 unique Settlement Class Members.

57.    Prior to mailing notices, JND analyzed the raw data to consolidate duplicate records within the spreadsheets and determined a total of 6,424 unique Settlement Class Members. JND updated the Settlement Class Member contact information using data from the National Change of Address ("NCOA") database.

58.    Further, JND performed advanced address research using the TransUnion skip-trace database to identify current addresses prior to mailing as required under the Order. The Settlement Class Member data was promptly loaded into a secure database established for this Action.

59.    Pursuant to the terms of the Settlement Agreement, on June 13, 2022, JND sent the customized Court-approved e-mail notice ("E-mail Notice") via e-mail from an established case inbox (info@PTCERISASettlement.com) to 6,008 unique Settlement Class Members with a valid e mail address (416 Settlement Class Members were excluded from the e-mail campaign as they did not have a valid e-mail address).

60.    As of the date of this Declaration, JND tracked 800 E-mail Notices that were returned to JND as undeliverable.

61.    Pursuant to the terms of the Settlement Agreement, on June 13, 2022, JND mailed the Court-approved notice ("Class Notice") via USPS first-class mail to 6,423 unique Settlement Class Members with a mailing address.

62.    As of the date of this Declaration, JND tracked 351 Class Notices that were returned to JND as undeliverable. JND conducted additional advanced address research through TransUnion on these 351 undeliverable Class Notices and received updated address information for 18 Class Members. JND promptly re-mailed Class Notices to these 20 Class Members (of which one (1) was returned as undeliverable).

63. As of the date of this Declaration, 6,347 Class Members were e-mailed or mailed a Notice that was not returned as undeliverable, representing 98.8% of total Settlement Class Members.

64. On June 13, 2022, JND established a Settlement Website (www.PTCERISASettlement.com), which hosts copies of important case documents, including the Class Action Settlement Agreement, Class Notice, Plan of Allocation, answers to frequently asked questions, and contact information for the Administrator.

65. As of the date of this Declaration, the Settlement Website has tracked 1,121 unique users with over 1,949 page views. JND will continue to update and maintain the Settlement Website throughout the administration process.

66. On June 13, 2022, JND established a case-specific toll-free number, 1-844-202-9489, for Settlement Class Members to call to obtain information regarding the Settlement. Callers have the option to listen to the Interactive Voice Response ("IVR") system, or to speak with a live agent. The toll-free number is accessible 24 hours a day, seven days a week.

67. As of the date of this Declaration, the toll-free number has received 17 incoming calls. JND will continue to maintain the toll-free number throughout the settlement administration process.

68. The E-mail Notice and Class Notice informed recipients that any Class Member who wished to object to the proposed Settlement could do so by filing a written objection with the Court, postmarked on or before August 31, 2022.

69. As of the date, JND has received one (1) objection from Class Member Matthew Ender (Newton, MA).

***Class Counsel's Requested Fee and Expense Awards is Fair and Reasonable***

70.    As detailed in the accompanying Fee Memorandum, Class Counsel believes that Class Counsel's request for attorneys' fees readily meets the standards set forth in In re Neurontin Mktg. & Sales Practices Litig., 58 F.Supp.3d 167 (D. Mass. 2014), and merits the Court's approval.

71.    This was a vigorously prosecuted case which involved considerable time and resources investigating the action, reviewing and analyzing documents produced through informal discovery, and negotiating an excellent result for the Settlement Class at mediation.

72.    Class Counsel undertook this action aware of the possibility they could be left uncompensated for their time and out-of-pocket expenses.

73.    The recovery of $1,725,000.00 in this case was achieved through the skill, work, dedication, and effective advocacy of Class Counsel who leaned on their decades of experience with complex ERISA class action litigation of this type.

74.    As payment for services rendered in achieving such a result, Class Counsel seek an award of attorneys' fees in the amount of $575,000.00 plus reimbursement of expenses reasonably incurred by Class Counsel.  Class Counsel's efforts since the inception of this case has been without compensation of any kind and their fee has been wholly contingent upon the result achieved.

75.    In this action, attorneys' fees equaling thirty-three and one third (33 1/3%) percent of the Settlement Fund results in a fair and reasonable fee, especially given that the monetary result provides a benefit to the Settlement Class, and society has as interest that the wrongdoing alleged is prevented in the future.

76.    As lead Plaintiffs' attorney, I personally managed, delegated, and supervised the allocation of personnel and expenses employed by my firm in this case.  We have aggressively,

efficiently, and vigorously prosecuted this case and represented the best interest of the Plaintiffs and the participants and beneficiaries of the Plan.  Over the course of the litigation, we have incurred the following expenses:

| Expense Category | Amount |
|---|---|
| PACER | $ 40.60 |
| Westlaw Research | $ 1,003.33 |
| Courier/Fed Ex | $ 217.70 |
| Transcripts | $ 104.30 |
| E-Discovery | $ 1,438.44 |
| Local Counsel | $ 600.00 |
| Court Costs (filing fees) | $ 600.00 |
| Travel and Accommodations for Fairness Hearing | $ 1,200.00 |
| Mediator | $ 10,000 |
|  |  |
| **Total** | $15,204.37 |

77.    The expenses listed above were actually incurred in the litigation of this case as reflected in the books and records of Capozzi Adler.  These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses.  These expenses were necessary to the prosecution and settlement of the case, and are of the type that would be billed to hourly clients of the firm.

78. The firm's hours and lodestar devoted to this matter, as of July 29, 2022, are as follows:

| Name | Position | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Mark K. Gyandoh | Partner | $885 | 107.6 | $95,226.00 |
| Donald R. Reavey | Partner | $885 | 110.2 | $97,527.00 |
| Gabrielle P. Kelerchian | Jr. Associate | $550 | 106.8 | $58,740.00 |
| Linda Gussler | Paralegal | $350 | 36.3 | $12,705.00 |
| Lauren Phillips | Paralegal | $335 | 32.9 | $11,021.50 |
| Hugh Murchie | Summer Legal Intern | $250 | 8.7 | $2,175.00 |
| Kathleen Hughes | Professional Staff | $250 | 10.9 | $2,725.00 |
| Kendall Adams | Professional Staff | $250 | 1 | $250.00 |
| **Totals** | | | 414.4 | $280,369.50 |

79.     The above table is based on my firm's contemporaneous time records, and breaks out the hours and rates for each attorney, paralegal and professional staff.

80.     Details and material supporting the time records and expenses referenced in this declaration are available upon the request of the Court.

81.     I reviewed the time printouts to confirm both the accuracy of the entries on the printouts as well as the necessity for and reasonableness of the time commitment to the litigation. Based on this review, I believe the time reflected in my firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the litigation.  Capozzi Adler litigated this case on a wholly contingent basis and the hourly rates shown for the attorneys and paraprofessionals at my firm are the current hourly rates for contingent matters.  These rates are in line with those charged by other firms in the field of nationwide ERISA class action work and have been approved by courts in numerous cases. Moreover, the rates are reasonable in comparison to the firms that defend nationwide ERISA class action cases.

82.     In total, Class Counsel has spent 414.4 hours on this case with a corresponding lodestar of $280,369.50.   Meaning Class Counsel's combined multiplier in this action is 2.1, well within the range approved in other matters as addressed in the Fee Memorandum.

83.     The time entries above do not include future time that will be spent on this case to communicate with class members and monitor Defendants' compliance with the Settlement, among other things.  It also does not include time that will be spent on preparation for and the interview with the Independent Fiduciary with respect to its review of the Settlement, or preparation for and attendance at the Fairness Hearing.

84.    Without the Action, it is highly unlikely that individual claimants would have had the resources to pursue claims of this magnitude.  Protecting the retirement funds of employees, and obtaining recompense when those funds are mismanaged, is in the public interest and supports the fee award sought.

85.    As discussed in the accompanying Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement Agreement and Fee memorandum, as a result of diligent efforts and their skill and expertise, Class Counsel were able to negotiate an excellent Settlement for the Settlement Class.

### *Capozzi Adler's Hourly Rates Compare Favorably to Their Peers*

86.    For its contingency practice, Capozzi Adler charges partner rates of $885 per hour; mid-level associate rates of $550 per hour; and paralegal and professional staff rates that range from $335 to $350 per hour.  More junior support staff are billed at $250 per hour.  These hourly rates are commensurate with the firm's degree of skill, experience, and reputation.  Each member of Capozzi Adler's Fiduciary Practice Group has the requisite experience, as described above, to command their hourly rates.

87.    In the course of my 17 year nationwide ERISA practice, I have worked with most if not all firms that have a national ERISA class action practice.  In my experience, while there are invariably differences in rates between different firms – and even between rates for lawyers within the same firm with the same number of years of practice – Capozzi Adler's rates are broadly in line with rates of other firms with nationwide class action practices, that have been the basis for awards of fees in courts around the country.

88.    Four of these firms that I have worked for, or with, in the past recently filed declarations in support of a fee petition in *Beach, et al. v. JPMorgan Chase Bank, N.A. et al*., No.

1:17-cv-00563 (S.D.N.Y.).  Like this Action, Beach involved allegations that JPMorgan Chase breached its fiduciary duties under ERISA to participants in the JPMorgan Chase retirement plan. *Id*.  Plaintiffs' counsel's declarations demonstrate attorneys and staff in their offices charge similar rates as Capozzi Adler.

89.    My former firm KTMC, a Pennsylvania based firm like Capozzi Adler, charges partner rates that range from $700 to $920; associate rates that range from $400 to $505; paralegal rates that range from $250 to $275; and professional staff rates of $250.  See Exhibit 3 (Excerpts of KTMC declaration).

90.    Nichols Kaster, PLLP, a Minnesota-based firm with a national ERISA practice, charges partner rates that range from $775 to $875; associate rates that range from $425 to $575; paralegal and professional staff rates of $250.  See Exhibit 4 (Excerpts of Nichols Kaster declaration).

91.    Keller Rohrback L.L.P., a Washington State-based firm with a national ERISA practice, charges partner rates that range from $765 to $1,035; associate rates that range from $400 to $650; and professional staff rates that range from $225 to $325.  See Exhibit 5 (Excerpts of Keller Rohrback declaration)

92.    Robbins Geller Rudman & Dowd LLP, with an office in the state of New York and a national ERISA practice, charges partner rates that range from $760 to $1,325; associate rates that range from $460 to $575; paralegal rates that range from $275 to $350; and professional staff rates that range from $290 to $295.  See Exhibit 6 (Excerpts of Robbins Geller declaration).

93.    Additionally, Capozzi Adler's rates generally compare favorably to the large, sophisticated firms that typically represent defendants in ERISA class actions.

94.    Morgan Lewis, who represented the Defendants in this matter stated in a court filing dated August 14, 2020, that the "range of hourly rates currently charged by Morgan Lewis attorneys and paraprofessionals who are currently or could be staffed on these cases, subject to modification depending upon further development, are as follows:" partner rates range from $1,025 to $1,250; associate rates range from $500 to $675; and professional staff rates range from $280 to $360.  See Exhibit. 7 (Excerpts of Morgan Lewis filing in In re COVIA Holdings Corp., et al., No. 20-33295 BK. Ct. S.D. Tex.).

95.    Further, the Valeo Report, a report that collected and summarized hourly rates across various firms, shows that among ERISA practice groups within the top 200 law firms in the defense bar, the 2017 hourly rate range for senior partners was $320-$1,363 (with an average of $835), for partners was $296-$1,202 (with an average of $751), and for senior associates was $238-$938 (with an average of $580).   See Exhibit 8 (Excerpts of Valeo Report).

96.    Finally, Capozzi Adler's rates have been implicitly approved by numerous courts while granting requests for fees.  *See, e.g., Diaz v. BTG Int'l, Inc*., No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021); *Pinnell v. Teva Pharmaceuticals USA, Inc*., No. 2:19-cv-05738-MAK (ECF No. 93) (E.D. Pa. June 11, 2021); *Gerken et al. v. Mantech Int'l..* No. 1:20-cv-01356-TSE (ECF No. 41) (E.D. Va. May 21, 2021); *Harding et al. v. Southcoast Hosp. Group* et al., No. 1:20-cv-12216-LTS (ECF. No. 51) (D. Mass. April 25, 2022).

### *Case Contribution Awards Sought for the Plaintiffs Are Reasonable*

97.    Plaintiffs seek an award of $10,000 for each of the three Class Representatives for their contributions to the prosecution and Settlement of the Action.  Any such awards will be paid from the Settlement Fund.

98.     Each of the Plaintiffs was instrumental in seeking relief on behalf of the Plan and they each have been actively involved in the litigation.  These individuals took time away from other obligations in order to fulfill their obligations to the Settlement Class by: (1) engaging counsel, reviewing the Complaint and agreeing to publicly serve as Named Plaintiffs; (2) staying informed of the case and making themselves available at all times to discuss the litigation; (3) providing information and documents; (4) participating in teleconferences concerning the Action; and (5) and reviewing, considering, and ultimately approving the proposed Settlement for presentation to the Court.

99.     Attached hereto as Exhibit 9 is Plaintiff Khan's declaration in support of his application for a case contribution award.  Plaintiff Ballinger's declaration is attached as Exhibit 10.  Plaintiff Craan's declaration is attached as Exhibit 11.

100.    As discussed in the accompanying Fee Memorandum, the requested case contribution awards are supported by ample legal authority in similar cases.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 1st day of August 2022, in Merion Station, Pennsylvania.

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire

***Proposed Class Counsel***